(1)



Ricco Devon Slade
      Plaintiff
  Against
NYC Health & Hospitals;
Dr. Aggarwal
      Defendents
Civil Action No: 24 cv 0514 (JMF)

## Memorandum of Law

RICCO DEVON SLADE, Plaintiff, Pro Se:

Plaintiff, who is currently incarcerated at Auburn Correctional Facility, filed this Pro Se action under 42 U.S.C. § 1983, while being detained at the Otis Bantum Correctional Center on Rikers Island; asserting claims for the unwanted administration of antipsychotic medications during his hospitalization at Bellevue Hospital by Defendent Raiana Aggarwal MD. The Plaintiff seeks monetary damages as to this claim.

## STATEMENT OF FACTS

The complaint alleges that the plaintiff unwillingly took a 1,064 mg injection of

antipsychotic medication, prescribed and administered by Dr. Aggarwal, under the pretense of being court ordered to take antipsychotic medications for the rest of his life. The plaintiff was not actively psychotic, does not have an exstensive Mental Health history, and now suffers from adverse side effects due to the antipsychotic medication.

## Argument

The Court should proceed with Plaintiff's Amended Complaint because the unwanted administration of antipsychotic medication by the defendent violates plaintiff's right to due process.

In deciding whether to proceed with this case, the court should consider that the plaintiff does not have an exstensive mental health history; is not on record for dangerous or potentially destructive behavior, and is currently suffering from adverse side effects due to the antipsychotic medications. Each of these factors weighs in favor of plaintiff's request to proceed with this case.

1.) No Extensive Mental Health History:

The plaintiff does not have a record for being homicidal, or actively pyschotic, but plaintiff does admit to attempting suicide in 2013. See 42 U.S.C. § 10803 ("Individual with a mental illness" is defined to include a person (A) who has a significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State.) also see Tillery v. Owens, 719 F. Supp. 1256, 1286 (W.D. Pa 1989) aff'd, 907 F.2d 418 (3d Cir. 1990) (a "serious" mental illness as one "that has caused significant disruption in an inmate's everyday life and which prevents his functioning in the general population without disturbing or endangering others or himself.") During his detainment on Rikers Island, and hospitalization at Bellevue, the plaintiff gave no indication of disruptiveness or dysfunction. He kept his hygiene, ate and slept regularly, and interacted with the staff and his fellow inmates with respect and consideration. During the initial evaluation, Dr. Aggarwal spent less than five minutes with Plaintiff, during which he expressed the desire to return to Rikers, and his unwillingness to take


antipsychotic medication. (see plaintiff's declaration ¶¶ 3) After the initial evaluation, the defendant became very persistent in her approach, and asked the plaintiff everyday following, was he ready to take the medication, because that would be the only way that she would clear him to go back to Rikers. See Page v. Norvell, 186 F. Supp. 2d 1134, 1138 (D. Ore 2000) (holding allegation that a mental health professional downgraded the plaintiff's mental health diagnosis after meeting with him for only two minutes, there was no evidence to support his "clinical findings," and may have purposefully misdiagnosised him, supported a deliberated indifference claim.)

2.) No Dangerous or Potentially Destructive Conduct:
The plaintiff has been in only one reported altercation since being detained on December 29th 2022, during which plaintiff was slashed on the neck. (claim being handled by a lawyer in State court.) Other than that, the plaintiff has been in control of his behavior. See Cruzan v. Dir, Mo. Dep't of Health, 497 U.S. 261, 278 (1990) (recognizing "(t)he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment.") also see Washington

v. Harper, 494 U.S. 210, 221, 110 S.Ct. 1028 (1989) (holding that prisoners have "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs.") Plaintiff was initially prescribed 10 mg of Zyprexa, which he refused. (see plaintiff's declaration ¶¶ 4)

Even though plaintiff was confined with mentally ill individuals, he maintained his mental stability although the experience was quite unnerving at times. See Goff v. Harper, 59 F. Supp 2d 910, 913 (S.D Iowa 1999) (noting prior finding of Eighth Amendment violation resulting from "the pandemonium and bedlam the mentally-stable inmates must suffer" from confinement with mentally ill inmates who can't or don't control their behavior.) Plaintiff continued to refuse to take the medication for approximately one to two weeks. (see plaintiff's declaration ¶5) Dr. Aggarwal told plaintiff that she was pursuing a court order for him to take the antipsychotic medications for the rest of his life. The court papers were produced and after considering the options given, plaintiff agreed to take 10 mg of the pill form of Abilify, after which the defendant unreasonably increased the dosage to the max 1,064 mg injection form of Abilify Aristada. (see plaintiff's declaration

¶¶ 6-8) see Sullivan v. Flannigan, 8 F.3d 591, 599 (7th Cir. 1993)(prisoner was not entitled to a drug-free period so he could prove he could function without medication.)

3.) Suffers From Adverse Side Effects:

Plaintiff spent 44 days hospitalized at Bellevue before returning to Rikers Island. (see plaintiff's declaration ¶9) During his last two weeks at the hospital, after the administration of the 1,064 mg Abilify Aristada injection, the plaintiff had a fungal injection on his right hand which he was given a steriod anti-fungal cream for. This had never occurred to the plaintiff before. Dr. Aggarwal told the plaintiff that it was probably just a reaction to the medication and that it would go away after a while. Plaintiff continued to take the injection between December 2023 and June 2024. The dosage of the injection has been lowered to a monthly 425 mg of Abilify Maintena since plaintiff's transfer to prison. Plaintiff currently suffers from: unusual sexual urges, impulsive behavior, and uncontrollable muscle movements (see plaintiff's declaration ¶¶ 10-11) Plaintiff maintains his competency even though the whole ordeal has been burdensome. see Vitek v. Jones, 445 U.S. 480,

491-94, 100 S. Ct. 1254 (1980) ("involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." Therefore, prisoners have a liberty interest arising from the Constitution in not being classified and treated as mentally ill, and the state has to provide due process protections before committing a prisoner to a mental hospital.)

## Conclusion

For the foregoing reasons, the Court should grant the plaintiff's motion and proceed with the Amended Complaint.

March 3rd 2025
Ticicco Devon Slade Plaintiff Pro Se
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13024
DIN: 24B2450

**AUBURN CORRECTIONAL FACILITY**
P.O. BOX 618
AUBURN, NEW YORK 13024

NAME: Rico Slade    DIN: 24B2850

RECEIVED MAR 07 2025 PRO SE

Pro Se Intake Office
500 Pearl Street
New York, NY 10007

LEGAL MAIL